UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CLARENCE WATSON HERNDON,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 1:20-cv-1091

Hon. Hala Y. Jarbou

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act of 1973 (RA), 29 U.S.C. §§ 701–796l, and various state laws. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is further required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will drop Defendants Mental Health Services, Washington, Bridgford, Davids, Traylor, Yuhas, Maranka, Bucholtz, Oversmith, Guilford, and Doolittle under Rule 21 because they are misjoined. The Court will also dismiss,

for failure to state a claim, the Plaintiff's claims against the MDOC other than his ADA and RA claims.

## Discussion

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Duane Waters Health Center in Jackson, Jackson County, Michigan.  The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  Plaintiff sues the MDOC, Michigan Health Service (MHS), and MDOC employees Director Heidi Washington and Equal Opportunity Employment Administrator Joanne Bridgford.  Plaintiff also sues the following ICF employees:  Warden John Davids; Assistant Deputy Warden C. Traylor; Grievance Coordinator Adam Yuhas; Mental Health Unit Chief David Maranka; Qualified Mental Health Professional Carrie Bucholtz; Resident Unit Manager Brooke Oversmith; Administrative Assistant Chad Guilford; and Registered Nurse Nicole Doolittle.

Plaintiff's complaint covers a series of events spanning more than three years, from September 2017 to October 2020, and involving the 12 Defendants to varying degrees.  Plaintiff asserts that he has been diagnosed with severe rheumatoid arthritis and major depression.  Due to the arthritis, "he has difficulty standing, maintaining balance, walking, gripping objects, extending and raising his arms, sleeping on a steel frame bed, and [he experiences] period flare-ups . . . ." (Compl., ECF No. 1, PageID.4.)  The major depression further causes him to have "difficulty sleeping, focusing, and concentrating" and that he has a "loss of appetite, high anxiety, and chronic episode[s] of despondency . . . ." (*Id.*)

Plaintiff alleges that, despite his conditions, the MDOC denied his requests for various items (e.g., electric toothbrush, beard trimmer, orthopedic shoes, walker) that would accommodate his functional limitations.  He alleges that he filed a grievance against the MDOC

2

related to these requests on September 15, 2017.  Over the three years that followed the first grievance, the MDOC allegedly did or failed to do the following:  denied Plaintiff periodic treatment team reviews; failed to provide an effective grievance mechanism to redress medical accommodations; denied MHS services; refused to modify department policy directives; relegated him back to Stage 1 in the Start unit;[1] failed to modify yard cages so that Plaintiff could exercise outdoors; denied Plaintiff's request for a chair to use during yard time; placed Plaintiff in restraints during non-contact visitation; removed Plaintiff from the Start Unit and placed him back in segregation; failed to supervise its employees; obstructed Plaintiff's attempts to file grievances; did not provide some of Plaintiff's medical records upon request; obstructed Plaintiff's effort to file a complaint with the United States Department of Justice; denied Plaintiff's use of a wheelchair during yard time; excluded Plaintiff from full participation during yard time; required that Plaintiff be placed in restraints during telephone calls with his attorney; and denied Plaintiff's requests for more integrated therapy sessions.

Although Plaintiff's earliest factual allegations involving the MDOC describe conduct starting in September 2017, his allegations involving any other Defendant describe conduct that occurred in June 2018 or later.

Plaintiff seeks declaratory relief, injunctive relief, and damages.

## II.     Misjoinder

Plaintiff joins 12 Defendants, each sued in both their personal and official capacities, connecting a series of discrete claims.  At this juncture, the Court reviews whether Plaintiff's claims are misjoined.

---

[1] Plaintiff presumably refers to the incentive stages of the Start Unit, a four-stage program designed as an alternative to administrative segregation, encouraging eligible prisoners to achieve progressive improvement and permit them to return to the general population.  *See* MDOC Director's Office Memorandum (DOM) 2020-20 (eff. Jan. 1, 2020), available at https://www.michigan.gov/documents/corrections/DOM_2020-20_Start_Unit_Final_675313_7.pdf.

### A. Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*,

4

661 F. Supp. 2d at 778 (internal quotation omitted).  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.  *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).  Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form.  *See* 28 U.S.C. § 1915(b)(1).  These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)).  The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied.  28 U.S.C. § 1915(g).  The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation.  *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

5

> Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim.

Therefore, the Court will look to the first listed Defendant and the first set of clear factual allegations against that Defendant to determine which portion of the action should be considered related. Plaintiff lists the MDOC first in the complaint's caption (Compl., ECF No. 1, PageID.2), list of defendants (*id.*, PageID.3), and body (*id.*, PageID.4). Plaintiff's earliest factual allegations assert that the MDOC had denied his requests for various items to accommodate his functional limitations, and he therefore filed a grievance against the MDOC on September 15, 2017. None of the other Defendants is transactionally related to Plaintiff's first claim involving the MDOC. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B). Plaintiff has, therefore, improperly joined Defendants Mental Health Services, Washington, Bridgford, Davids, Traylor, Yuhas, Maranka, Bucholtz, Oversmith, Guilford, and Doolittle.

### B.   Remedy

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party,

7

rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings a civil rights action under 42 U.S.C. § 1983 and, purportedly, various other state and federal statutes. For civil rights suits filed in Michigan, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). It further appears that all other claims Plaintiff brings in this action would also be subject to the same three-year statute of limitations. *See* Mich. Comp. Laws § 600.5805(2). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

8

>   exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316 (9th Cir. 1999)). The Sixth Circuit noted that, because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's misjoined claims involve conduct that has occurred since June 2018, within the three-year period of limitations. Those claims are not at risk of being time-barred. Accordingly, the Court will exercise its discretion under Rule 21 and drop Plaintiff's claims against Defendants Mental Health Services, Washington, Bridgford, Davids, Traylor, Yuhas, Maranka, Bucholtz, Oversmith, Guilford, and Doolittle because they are misjoined and not at risk of being time-barred. The Court will dismiss without prejudice Plaintiff's complaint against them under Rule 21 of the Federal Rules of Civil Procedure.[2]

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### IV. ADA and RA

Plaintiff has alleged that the MDOC has violated rights provided to him under the ADA and RA. Plaintiff presumably claims that the MDOC has violated Title II of the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall,

10

because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[3] In order to state a claim under Title II of the ADA, Plaintiff must show:  (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).  The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The proper defendant under a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).  Plaintiff has named the MDOC as a Defendant.

---

[3] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995)).

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Additionally, the Sixth Circuit has determined that a State that accepts relevant federal funds waives sovereign immunity under the RA. *See Nihiser v. Ohio EPA,* 269 F.3d 626, 628–29 (6th Cir. 2001); *see also Carten*, 282 F.3d at 398 (citing cases); 42 U.S.C. § 2000d-7. Therefore, the Court concludes that Plaintiff's allegations are sufficient to state claims brought under the ADA and RA against the MDOC.

## V. Remaining Claims against the MDOC

Plaintiff may not maintain his further claims against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).

### A. § 1983

Congress has not expressly abrogated Eleventh Amendment immunity by statute in § 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768,

771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Thus, Plaintiff fails to state a § 1983 claim against the MDOC.

### B. State Law Claims

Plaintiff's ability to bring any state law claim against the State—or its departments—depends entirely on whether the State has waived its immunity to suit in federal courts. A waiver must be clearly expressed and cannot be merely implied within the language of the statute. *United States v. King*, 395 U.S. 1, 4 (1969) ("[A] waiver [of sovereign immunity] *cannot be implied but must be unequivocally expressed*.") (emphasis added); *cf. Will*, 491 U.S. at 66–67. The federal courts must strictly construe the scope of any purported waiver in favor of the State. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). When examining the scope of a purported waiver, a federal court must look at the language of the statute to determine not only "*whether* [the State] may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99. Consequently, a State's willingness to waive its immunity to suit in its own state courts is insufficient on its own to create a waiver of its Eleventh Amendment immunity in the federal courts. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (citing *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)). Therefore, a plaintiff may bring a state law claim against a State or its departments in the federal courts only if the State clearly expressed that it "inten[ded] to subject itself to suit in *federal court*." *Atascadero*, 473 U.S. at 234 (citing *Smith v. Reeves*, 178 U.S. 436, 441 (1900)).

None of the state laws at issue in Plaintiff's complaint expressly waives the State's sovereign immunity in the federal courts. Michigan has created a limited waiver of its immunity for general tort liability. *See* Mich. Comp. Laws § 691.1407. However, that statute lacks any indication that the State intended to subject itself to litigation in the federal courts. Therefore, the State has not created a blanket waiver of its immunity to suit in federal court. *See Atascadero*, 473 U.S. at 234. Moreover, none of the state laws on which Plaintiff bases his claims indicate that Michigan intended to subject itself to suit in federal court. *See* Mich. Comp. Laws §§ 37.1101–37.1607 (Persons with Disabilities Civil Rights Act), §§ 37.2101–37.2804 (Elliott-Larsen Civil Rights Act), §§ 333.26261–333.26271 (Medical Records Access Act). Consequently, the State—acting through the MDOC—has not waived its immunity to suit in federal court for any of Plaintiff's state law claims. *See Atascadero*, 473 U.S. at 234. Therefore, Plaintiff fails to state a claim against the MDOC on any state law grounds.

## **Conclusion**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that Defendants Mental Health Services, Washington, Bridgford, Davids, Traylor, Yuhas, Maranka, Bucholtz, Oversmith, Guilford, and Doolittle are misjoined in this action. The Court will dismiss Plaintiff's complaint against them without prejudice.

Having conducted the review required by the PLRA, the Court determines that Plaintiff's claims against the MDOC, other than his ADA and RA claims, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's ADA and RA claims against the MDOC remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 21, 2021                            /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   UNITED STATES DISTRICT JUDGE